No. 50,733

WILLIAM M. COE, as Conservator of LAURA A. COE, a Minor, and REBECCA S. COE, *Appellants and Cross-Appellees,* v. SECURITY NATIONAL INSURANCE COMPANY, *Appellee and Cross-Appellant.*

(620 P.2d 1108)

Opinion filed December 6, 1980.

*Morgan Wright,* of Larned, argued the cause and was on the briefs for the appellants and cross-appellees.

*Christopher Randall,* of Turner & Boisseau, Chartered, of Wichita, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: This appeal comes to this court on review of a decision of the Court of Appeals in *Coe v. Security National Ins. Co.,* 5 Kan. App. 2d 176, 614 P.2d 455 (1980). It involves the statutory construction of the following provision of the Kansas Automobile Injury Reparations Act.

"(*l*) 'Monthly earnings' means: (1) In the case of a regularly employed person or a person regularly self-employed, one-twelfth (1/12) of the annual earnings at the time of injury; or (2) in the case of a person not regularly employed or self-employed, or of an unemployed person, one-twelfth (1/12) of the anticipated annual earnings from the time such person would reasonably have been expected to be regularly employed. *In calculating the anticipated annual earnings of an unemployed person who has previously been employed, the insurer shall average the annual compensation of such person for not to exceed five (5) years preceding the year of injury or death, during which such person was employed.*" K.S.A. 1979 Supp. 40-3103(*l*). Emphasis supplied.

The facts leading to this action are briefly these: Alice Coe died of injuries received in an automobile accident on December 29, 1975. At the time of the accident she was the owner and operator of the automobile insured by Security National Insurance Company. Her survivors were Laura A. and Rebecca S. Coe, minor children. Alice Coe was not employed at the time of her death but had planned to move to Wichita where she had a promise of employment. She had previously worked for the State of Kansas at the Larned State Hospital on a regular basis until January 31, 1973, when she resigned. Thereafter, she was employed intermittently at temporary work. Her income history is as follows:

| Year | Annual Income | Employer |
|------|--------------|----------|
| 1970 | $4,954.00 | State of Kansas |
| 1971 | 5,839.00 | State of Kansas |
| 1972 | 5,679.85 | State of Kansas |
| 1973 | 525.00 | State of Kansas |
| 1973 | 601.21 | Temporary work |
| 1974 | 400.00 | Temporary work |
| 1975 | 382.00 | Temporary work |

The claim in this action is for "survivors' benefits." The definition of survivors' benefits may be found in K.S.A. 1979 Supp. 40-3103(*y*). Such benefits are to be equal to the amount lost from the injured person's monthly earnings, up to a maximum of $650.00 per month, to be paid for not more than a year, less amounts in those months the injured person received disability benefits prior to death. This monthly allowance is paid to a

decedent's spouse or children under the age of eighteen years when death of the injured person resulted from such an injury. K.S.A. 1979 Supp. 40-3103(x).

Alice Coe was unemployed at the time of her death. A difference of opinion arose over the amount of survivors' benefits due under K.S.A. 1979 Supp. 40-3103(l). Under plaintiffs' calculations, claim was made for $5,693.21. They arrived at this figure by adding the following annual earnings figures:

    1970—$4,954.00
    1971— 5,839.00
    1972— 5,679.85
    1973— 6,300.00

These totaled $22,772.85 and when divided by four you have an average for these four years of $5,693.21, the amount for which claim was made. The $6,300.00 for 1973 was arrived at by projecting the pay from the state for January, 1973, of $525.00 for the whole year. Twelve times $525.00 comes to $6,300.00. The odd job amounts earned in 1973, 1974, and 1975 were ignored in making the calculation.

The insurance company, in arriving at survivors' benefits, totaled the amounts actually earned by Alice Coe from temporary jobs and from the state for the years 1971 through 1975, arrived at a total of $13,427.12, divided this total by five, and came up with an average annual earnings of $2,685.41. This was the amount of the insurance company's counteroffer.

The trial court, in arriving at survivors' benefits, disregarded amounts earned by Alice Coe the year of her death (1975), added the annual earnings for the years 1970 through 1974, divided this total by five, and came up with an annual earnings figure of $3,599.60. Judgment was awarded for that amount plus interest at 18% per annum from March 19, 1977, plus costs. We will consider the allowance of interest later.

On appeal the Court of Appeals arrived at monthly earnings based on anticipated annual earnings as follows: (1) It excluded the annual earnings for the year of injury and death; (2) it counted the years during which the insured was *regularly* employed by the state for an entire year; (3) it annualized the monthly compensation for regular employment with the state for the year 1973 by multiplying $525.00 by twelve and arrived at a $6,300.00 annual earning figure for 1973; (4) it omitted all temporary or

occasional employment; (5) added the totals for 1970 through 1973; and (6) divided this total by four.

Because of these varied interpretations regarding K.S.A. 1979 Supp. 40-3103(*l*), we granted review to settle the question of how to calculate the "anticipated annual earnings" of an unemployed person who has been previously employed. The statute is in two parts; the first refers to a *regularly employed person,* in which case you arrive at survivors' benefits by merely taking one-twelfth of the person's annual earnings at the time of the injury. The second part of this statute refers to the injured *person who is unemployed* when injured. Survivors' benefits in the latter case are to be determined by arriving at a figure for anticipated annual earnings. Anticipated annual earnings are determined by averaging the annual compensation of such person for *not to exceed* five years *preceding the year of injury* or death, *during which such person was employed.*

If you consider and follow the plain words of this statute you determine annual earnings for *not to exceed* five years. The years averaged do not have to be five in number. They must be years that precede the year of injury or death. In this case the year 1975 is dropped from consideration. The years must be years in which such person was employed. Any year in which the person had no income should be omitted from consideration. This second part of the statute, referring to an unemployed person, does not mention regular employment or regular earnings; it refers to annual compensation for not to exceed five years *during which such person was employed.* To arrive at anticipated annual earnings under K.S.A. 1979 Supp. 40-3103(*l*) a person should (1) drop the year of injury and death from consideration; (2) exclude any of the five preceding years in which the decedent was not employed and had no income; (3) arrive at the total of whatever annual compensation was earned during the remaining years, whether earned during a full or partial year or whether received from regular or temporary work, or both; (4) divide this total by the number of those years in which the decedent had some income; and (5) thereby arrive at average anticipated earnings.

In the present case Alice Coe had annual compensation each year from 1970 to and including 1975. The year of death, 1975, should be excluded from consideration. The annual compensation earned in the five preceding years were:

1970—$4,954.00
1971— 5,839.00
1972— 5,679.85
1973— 1,126.21
1974—    400.00

By adding these five items of annual compensation and dividing by five you arrive at the average annual earnings figure which was adopted by the trial court, and which we believe comports with the intent of the legislature as gleaned from the words of this statute.

It appears that if the determination of anticipated annual earnings is made dependent upon past *regular* employment there will be uncertainty in the meaning of regular employment. Some workers hold two different jobs and work 40 hours a week at each job. Another worker has one 40 hour a week job and works at additional temporary employment. In such cases which is the regular employment? Additional uncertainty would result from "annualizing" compensation from so-called regular employment for years in which an insured is regularly employed for less than a full year. The Court of Appeals annualized the income received from the state for 1973 by multiplying the January earnings of $525.00 times twelve. If this method is approved the difficulties of determining anticipated annual earnings will be compounded by having to annualize income every year in which the insured was not employed for a full twelve month period. Nowhere in the statute do we find authority to annualize earnings in those years a person is employed for a partial year only. Neither do we find any authority for omitting amounts earned from occasional or temporary employment. The statute speaks of averaging annual compensation.

The legislative history of this act is not helpful. Three no-fault insurance proposals were submitted to the legislature. One was submitted by the Special Committee on Motor Vehicle Accident Reparations. Another bill was submitted by the insurance commissioner of the state, and the third was submitted by an individual legislator. Only the bill submitted by the insurance commissioner had this provision for "survivors' benefits" in it in the present form. The minutes of the insurance committee meetings indicate that this bill is a modification of the Colorado statute and of the Uniform Motor Vehicle Accident Reparations Act, but neither of those acts has this provision in them. No other state

statute has been cited by the parties and we have found none containing this particular provision relating to "monthly earnings." So, we are left to our own construction.

The purpose of the act is set forth in K.S.A. 1979 Supp. 40-3102 as follows:

"The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."

It is apparent that prompt payment of benefits was an overriding concern of the legislature. Personal injury protection benefits payable under the act become

"[O]verdue if not paid within thirty (30) days after the insurer . . . is furnished written notice of the fact of a covered loss and of the amount of the same. . . . [N]o such payment shall be deemed overdue where the insurer . . . has reasonable proof to establish that it is not responsible for the payment. . . . All overdue payments shall bear simple interest at the rate of eighteen percent (18%) per annum." K.S.A. 1979 Supp. 40-3110(b).

In order for the insurer and the survivors to agree and the payment to be made within thirty days as contemplated by the statute, the formula for determining "monthly earnings" must be easy to apply to facts readily available to the parties. It cannot wait for resolution by court action. Income tax reports would be available in practically all cases and would establish the amounts of annual wages or earnings. The above formula should be easily applied. It is simple, meets the statutory language, and, although factual situations can be conjured up which may result in inequity, it seems as fair to all concerned as can be gleaned from the directions of the statutory language employed by the legislature.

A court faced with the problem of construction of a statute has as its function the interpretation of the statute and should not rewrite legislation. *Dougan, Administratrix v. McGrew,* 187 Kan. 410, 415, 357 P.2d 319 (1960). A court has no right to enlarge the scope of the statute or to amend it by judicial interpretation. *Schroder v. Kansas State Highway Commission,* 199 Kan. 175, 182, 428 P.2d 814 (1967). A statute should never be given construction that leads to uncertainty, injustice or confusion, if possible to construe it otherwise. *Whitehead v. State of Kansas Labor Department,* 203 Kan. 159, 162, 453 P.2d 11 (1969). In construing a statute, words and phrases should be construed

according to context and the approved usage of the language, and words in common use are to be given their natural and ordinary meaning. *Hessell v. Lateral Sewer District,* 202 Kan. 499, 502, 449 P.2d 496 (1969).

The second issue raised concerns the allowance of interest by the trial court and Court of Appeals.

The trial court awarded interest at 18% per annum from March 19, 1977, to date of judgment based on the following statute:

"(b) Personal injury protection *benefits* payable under this act *shall be overdue if not paid within thirty (30) days after the insurer or self-insurer is furnished written notice of the fact of a covered loss and of the amount of same,* except that disability benefits payable under this act shall be paid not less than every two (2) weeks after such notice. If such written notice is not furnished as to the entire claim, any partial amounts supported by written notice is overdue if not paid within thirty (30) days after such written notice is furnished. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within thirty (30) days after such written notice is so furnished: *Provided, That no such payment shall be deemed overdue where the insurer or self-insurer has reasonable proof to establish that it is not responsible for the payment, notwithstanding that written notice has been furnished.* For the purpose of calculating the extent to which any personal injury protection benefits are overdue, payment shall be treated as being made on the date a draft or other valid instrument which is equivalent to payment was placed in the United States mail in a properly addressed postpaid envelope, or, if not so posted, on the date of delivery. *All overdue payments shall bear simple interest at the rate of eighteen percent (18%) per annum."* K.S.A. 1979 Supp. 40-3110. Emphasis supplied.

Plaintiffs argue the trial court and the Court of Appeals were correct because the insurance company failed to pay any part of the survivors' benefits.

The defendant argues:

"The record establishes that the plaintiffs demanded the sum of $5,613.70 in survivors' benefits. The insurer had reasonable proof that it did not owe that sum; indeed, the district court found the plaintiffs' computation of that sum in error. The insurer offered to pay the amount of survivors' benefits that it believes was the correct amount pursuant to the provisions of the Kansas Automobile Injury Reparations Act. The insurer never *refused* to make any payments. The insurer paid over $9,000 in other types of benefits to the plaintiffs; the insurer stood ready to pay the $2,685.41 to the plaintiffs but the plaintiffs refused to accept the payment. After the lawsuit was filed, the insurer confessed judgment in the amount of $2,685.41 and paid that sum into court."

Defendant insurance company insists the interest section of the statute is only meant to apply as a penalty when the insurance company *refuses to pay* without good cause. Defendant contends

it made all payments on which there was no question and the refusal to pay was only on that portion of survivors' benefits about which there was a reasonable doubt. We agree.

When there is a good faith controversy as to the amount of survivors' benefits due under K.S.A. 1979 Supp. 40-3103(*l*) an insurer should not be penalized by applying the eighteen percent (18%) interest provision contained in K.S.A. 1979 Supp. 40-3110. In the present case the parties, the trial court, and the Court of Appeals construed the provisions of the statute on monthly earnings and arrived at different amounts. A good faith controversy did exist. The insurer did pay all other benefits within the required time. Therefore no interest should have been assessed for any period prior to the date of the judgment.

The final issue raised on appeal concerns failure to award attorney fees.

The pertinent statute is K.S.A. 1979 Supp. 40-3111(*b*):

"An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. The attorney's fee shall be a charge against the insurer or self-insurer in addition to the benefits recovered, if the court finds that the insurer or self-insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

In *Watson v. Jones,* 227 Kan. 862, 871, 610 P.2d 619 (1980), we said:

"Whether the refusal of an insurance company to pay is without just cause or excuse under this statute is to be determined on the facts and circumstances of each case. The circumstances confronting the insurer when payment of loss is denied determines the question, and the circumstances are to be judged as they would appear to a reasonably prudent man having a duty to investigate in good faith and to determine the true facts of the controversy. *Brown v. Continental Casualty Co.,* 209 Kan. 632, 498 P.2d 26 (1972). Whether there was just cause to refuse payment and therefore justification for denial of attorney's fees is in the trial court's sound discretion. *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, 598, 528 P.2d 134 (1974)."

The statute under consideration in *Watson* was K.S.A. 40-256. In *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978), the Court of Appeals pointed out that K.S.A. 1979 Supp. 40-3111(*b*) and K.S.A. 40-256 contained similar language, and case law construing 40-256 could be used to construe 40-3111(*b*). 2 Kan. App. 2d at 261.

K.S.A. 1979 Supp. 40-3111(*b*) provides that an attorney is

entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. Under K.S.A. 1979 Supp. 40-3110 no benefits shall be deemed overdue where the insurer or self-insurer has reasonable proof to establish that it is not responsible for payment of those particular benefits, or when in the sound discretion of the trial court the circumstances confronting the insurer when the claim for benefits was denied furnished just cause or excuse for refusal to pay such claim. Such was the present case and no attorney fees should have been awarded.

Accordingly the judgment of the district court is affirmed as to the amount due for survivors' benefits and as to the disallowance of attorney fees; it is reversed on the allowance of interest. The judgment of the Court of Appeals is reversed as to the amount due for survivors' benefits and as to the allowance of interest; it is affirmed as to the disallowance of attorney fees.

HERD, J. dissenting: I respectfully dissent from the majority opinion. I would calculate the anticipated annual earnings of an unemployed person by adding together the years of annual compensation and dividing it by the number of years employed not to exceed five (5). In this case, I would use the annual income for the years 1970, 1971 and 1972 and divide by three producing an average annual compensation of $5,490.95. Also, I would award interest on the amount owed from the date of the accident at 18%.